# EXHIBIT 8

Date: February 13, 2026

RE: Draft Zoning Amendments – City of Wixom

To: Chair and Members of the Wixom Planning Commission,

My name is Dennis Griffin. I am an owner of vacant industrial property in the City of Wixom between South Wixom Road and Oak Creek Drive. Over the last 25 years, I have been fortunate to have been part of project teams that have developed large and small projects in multiple municipalities in southeast Michigan and Grand Rapids. Part of our success has been to always approach a project in a new municipality as a guest first and then as a partner to complete the process of getting to the finish line in a collaborative way. I am writing to offer my input, comments, concerns on the draft data center zoning amendment now before you.

I appreciate the Commission's initiative to proactively review a land use that has become a highly visible and often emotional topic in other communities. I also recognize the importance of protecting neighborhoods, infrastructure, and public confidence. My purpose in writing is to offer insights in hope that Wixom's response remains balanced, defensible, and aligned with the way this community has historically planned and regulated industrial development.

For full transparency, my partners and I are proposing to develop a data center in our industrial property in Wixom. We truly believe we have a plan that is the "Right Size in the Right Location". Over the past several months, our development team has worked with City staff and the City's planning consultant to get guidance and shape our plan toward existing zoning and land use. The City staff and consultants have been a pleasure to work with and we appreciate them for their professionalism, experience and candor.

Most recently we have become aware of the draft amendment that introduces regulations that would i) add additional testing and reporting requirements, ii) procedurally lengthen or make discretionary the approval process, and iii) potentially eliminate currently conforming property from consideration as a data center use.

From a planning and land use perspective, I respectfully offer the following observations:

- <u>First</u>, the City's existing ordinance already treats data processing and information technology facilities as permitted by right in the M-1 and M-2 districts. Site plan review, noise standards, lighting controls, setbacks, landscaping, traffic circulation, stormwater, and utility coordination already apply. These tools are precisely the mechanisms communities rely upon to address operational and compatibility impacts.

- <u>Second</u>, the technical memorandum prepared for the Commission correctly focuses on measurable impacts such as electrical demand, water usage, noise, fuel storage, security, and decommissioning. Those are appropriate and defensible performance-based standards.

- <u>Third</u>, the fixed 1,000-foot separation from residential uses does not manage a land use interface. Where there are intervening properties and residential does not directly abut a proposed data center site, there exists a logical and practical gap in this proposed requirement. This setback requirement treats a data center differently than other permitted industrial uses within the same zoning district, despite the availability of operational standards that directly address the issues of concern. ***Simply, we could be forced to have a larger 1,000' setback AND be quieter than another conforming M-1 use between our data center and the residential use that is intended to be protected.*** Modern data center mechanical systems, when designed to current standards, operate at noise levels comparable to ordinary commercial rooftop equipment. By contrast, heavy truck operations at significantly shorter distances produce materially higher sound levels. This illustrates why performance-based standards are more effective than large, arbitrary buffers.

  In my own case, the nearest residential zoning is separated from our site by an active industrial corridor that includes mature industrial buildings, truck parking and other continuous operations. Our proposed data center buildings would be i) located over 550 feet from the nearest residential boundary and ii) further separated by existing mature uses that may indeed have a lower noise/nuisance standard than a data center.

- <u>Fourth</u>, the current draft effectively combines highly prescriptive siting standards with discretionary review. This form of double regulation reduces predictability, increases entitlement risk, and is inconsistent with the manner in which most other industrial uses are regulated within Wixom.

- <u>Fifth</u>, the origin of this ordinance effort is clearly tied to recent controversy in neighboring communities involving extremely large, multi-hundred-acre, gigawatt-plus data center campuses. Wixom's industrial fabric, parcel sizes, and infrastructure context are materially different. It is reasonable and prudent for the City to study a hot-topic use. It is equally prudent to tailor any regulatory response to Wixom's own land use structure rather than importing scale-driven reactions from fundamentally different projects. Again, our proposal will be the "Right Size and the Right Location" compared to some of the mega-sites in the region.

I respectfully suggest that the most defensible and balanced course for the City is to focus on strengthening technical and operational review requirements, while avoiding broad separation rules that apply even where no residential adjacency exists.

Accordingly, I respectfully request that the Commission consider the following direction:

1. Retain data centers as a permitted industrial use subject to site plan review.
2. Adopt clear technical submittal requirements addressing utilities, water usage, noise, fuel storage, security, and decommissioning.
3. Apply any enhanced buffering or screening standards only where a data center site directly abuts a less-intensive zoning district.
4. Remove or substantially revise the proposed 1,000-foot separation requirement where intervening industrial zoning and uses are present.
5. Return the draft ordinance for refinement to ensure internal consistency with Wixom's established industrial zoning framework.

I believe this approach allows the City to demonstrate that it has thoughtfully examined an emerging and controversial land use, while also concluding—based on the fabric of Wixom's industrial districts—that existing regulatory tools, supplemented with targeted technical standards, are sufficient to protect the public interest. ***Public interest can certainly include the valid concerns of the private citizens, public bodies, local businesses and responsible developers and property owners.***

I appreciate the Commission's time and the professionalism of City staff and planning consultant. I remain committed to working cooperatively with the City to ensure that our projects will be viewed as responsible, collaborative investments that all stakeholders including the City of Wixom, its citizens, our tenant clients can be proud of.

Respectfully,

Dennis Griffin